IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EXCEPTIONAL MARKETING
GROUP, INC.,

    Plaintiff,

      v.

CIVIL ACTION FILE
NO. 1:10-CV-1312-TWT

JEFF JONES, et al.,

    Defendants.

ORDER

      This is an action for breach of contract.   It is before the Court on the
Defendants' Motion to Dismiss [Doc. 2]; the Defendants' Motion to Strike [Doc. 8];
and the Plaintiff's Motion to Strike [Doc. 9].   For the reasons set forth below, the
Defendants' Motion to Strike [Doc. 8] is GRANTED IN PART and DENIED IN
PART, the Plaintiff's Motion to Strike [Doc. 9] is GRANTED, and the Defendants'
Motion to Dismiss [Doc. 2]  is GRANTED IN PART and DENIED IN PART.

## I.  Background

      The Plaintiff, Exceptional Marketing Group, Inc. ("EMG"), is a Georgia
corporation that provides marketing services.  From September 2004 until June 2009,
Defendant Jeff Jones was employed by EMG as Vice President of Business

Development – Hospitality and Travel.  In this position, Jones solicited clients for EMG.  While working for EMG, Jones resided in Florida.  Jones communicated with EMG's Georgia office by telephone and email and sent monthly invoices to EMG's Georgia headquarters.  Further, Jones traveled to Georgia on multiple occasions to discuss marketing strategies and perform work for EMG.  Jones also flew through the Atlanta airport while conducting EMG's business.  On behalf of EMG, Jones performed work for several clients with locations in Georgia.  Further, while working for EMG, Jones provided marketing services for Fiesta Americana Hotels and Resorts ("Fiesta"), a hotel chain based in Mexico.

On June 29, 2009, Jones and EMG entered into a written severance agreement. (Compl., Ex. A.)  The agreement provided that Jones would not "share trade secrets of the Company with any person or organization," and that Jones would "immediately return all such Company information in your possession."  Id. Also, the agreement required Jones "not to solicit the customers of the Company with whom you have been servicing for marketing services for a period of one year from the Effective Date this [sic] letter."  Id.

Upon leaving EMG, Jones began working for 89 Degrees, LLC ("89 Degrees"), a marketing company headquartered in Massachusetts.  Defendant Thomas Woodside, a Massachusetts resident, was 89 Degrees' Vice President of Business Development

– Retail.  While working at 89 Degrees, Jones allegedly solicited Fiesta to transfer its marketing business from EMG to 89 Degrees.  As a result of this solicitation, Fiesta engaged 89 Degrees to provide marketing services and terminated its relationship with EMG.  Also, while working for 89 Degrees, Jones allegedly used an EMG email account to disclose EMG's trade secrets to Woodside and 89 Degrees.

EMG filed this Complaint  seeking damages for breach of contract, tortious interference with contract, tortious interference with business relations, violation of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-761 *et seq.,* conversion, violation of the Uniform Deceptive Trade Practices Act, O.C.G.A. § 16-9-120, *et seq.*, and unjust enrichment.  The suit was removed to federal court based on diversity of citizenship.  See 28 U.S.C. § 1332.  The Defendants have moved to dismiss the Plaintiff's claims for lack of personal jurisdiction.   See FED. R. CIV. P. 12(b)(2).   Further, the Defendants have moved to dismiss EMG's claims for breach of contract, tortious interference with contract, tortious interference with business relations, and unjust enrichment for failure to state a claim.  See  FED. R. CIV. P. 12(b)(6).

The Defendants argue that neither Jones, Woodside, nor 89 Degrees has sufficient contacts with Georgia to satisfy the Georgia long-arm statute or federal due process.  Further, the Defendants claim that the nonsolicitation clause in the separation agreement is unenforceable.  Finally, both parties have filed Motions to Strike [Docs.

8 & 9].  The Defendants argue that portions of the declarations in support of the Plaintiff's Response to the Defendants' Motion to Dismiss [Doc. 5] should be struck because they are speculative and conclusory.  The Plaintiff argues that the declarations in support of the Defendants' Reply in Support of the Defendants' Motion to Dismiss [Doc. 6] should be struck because federal and local rules do not authorize filing reply declarations.

## II.  Legal Standards

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

"In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, nonresident defendant."  Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988).  The plaintiff establishes a prima facie case by presenting "enough evidence to withstand a motion for directed verdict."  Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  A party presents enough evidence to withstand a motion for directed verdict by putting forth "substantial evidence . . . of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions . . ."  Walker v. NationsBank of Florida, 53 F.3d 1548, 1555 (11th Cir. 1995).  The facts presented in the plaintiff's complaint are taken as true to the extent they are uncontroverted.  Foxworthy v.

Custom Tees, Inc., 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995). If, however, the

defendant submits affidavits challenging the allegations in the complaint, the burden

shifts back to the plaintiff to produce evidence supporting jurisdiction. Diamond

Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257 (11th Cir.

2010); Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1269 (11th Cir. 2002). If the

plaintiff's complaint and supporting evidence conflict with the defendant's affidavits,

the court must construe all reasonable inferences in favor of the plaintiff. Madara, 916

F.2d at 1514.

      B.    Motion to Dismiss for Failure to State a Claim

A complaint should be dismissed under Rule 12(b)(6) only where it appears that

the facts alleged fail to state a "plausible" claim for relief. Ashcroft v. Iqbal, 129 S.

Ct. 1937, 1949 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion

to dismiss for failure to state a claim, however, even if it is "improbable" that a

plaintiff would be able to prove those facts; even if the possibility of recovery is

extremely "remote and unlikely." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556

(2007) (citations and quotations omitted). In ruling on a motion to dismiss, the court

must accept factual allegations as true and construe them in the light most favorable

to the plaintiff. See Quality Foods de Centro America, S.A. v. Latin American

Agribusiness Dev. Corp., S.A., 711 F.2d 989, 994-95 (11th Cir. 1983). Generally,

notice pleading is all that is required for a valid complaint.  See Lombard's, Inc. v. Prince Mfg., Inc., 753 F.2d 974, 975 (11th Cir. 1985), cert. denied, 474 U.S. 1082 (1986).  Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Twombly, 550 U.S. at 555).

## III.  Discussion

### A.    The Defendants' Motion to Strike

The Defendants have moved to strike portions of the Plaintiff's declarations filed in support of the Plaintiff's Response to the Defendants' Motion to Dismiss. Motions to strike may be made only to pleadings.  FED. R. CIV. P. 12(f).  The Court will consider the motion as an objection to consideration of the declaration.  A declaration may "only be considered to the extent that it is based on personal knowledge."  HomeBingo Network v. Chayevsky, 428 F. Supp. 2d 1232, 1238 (S.D. Ala. 2006) (citing FED. R. EVID. 602).  "However, when an affiant avers that his statements are based on personal knowledge, a district court is 'bound to accept [such] statements as true, unless the context demonstrate[s] otherwise.'"  Id. (quoting Martin v. Rumsfeld, No. 04-16063, 2005 WL 1526465, at *2 (11th Cir. June 29, 2005)).

In Atlanta Attachment Co. v. Leggett & Platt, Inc., No. 05-CV-1071, 2007 WL 5011980 (N.D. Ga. Feb. 23, 2007), the plaintiff offered affidavit testimony from the

plaintiff's CEO.  The CEO's affidavit explained the damages suffered by the plaintiff and offered an opinion explaining why other companies would no longer do business with the plaintiff.  Id. at *3-4.  The court held that the CEO's statements could be considered, reasoning that the statements were "all rationally based on the perceptions of the CEO."  Id. at *4.

By contrast, in Bozeman v. Per-Se Technologies, Inc., 456 F. Supp. 2d 1282 (N.D. Ga. 2006), the plaintiff offered testimony explaining why a fellow employee was upset.  The court declined to consider the plaintiff's testimony, reasoning that "as the Plaintiff did not have access to [the employee's] thought processes, his testimony about why [the employee] was upset constitutes speculation."  Id. at 1299 n.34.

Here, the Defendants argue that the Court should strike several portions of the Declaration of Jim DiChiara.  First, the Defendants object to testimony claiming that the Defendants "had to know," "would have had to know," or "had to have known" that their conduct would violate the nonsolicitation and confidentiality agreements, thereby injuring EMG.  (See DiChiara Decl. ¶¶ 13-15.)  As in Bozeman, DiChiara did not have access to the Defendants' thought processes.  See Bozeman, 456 F. Supp. 2d at 1299 n.34 (finding that testimony regarding employee's motivations was speculation).  Further, merely stating that the Defendants "had to know" the consequences of their actions does not assert a fact.  Although EMG may offer

testimony of facts making it likely that the Defendants knew the consequences of their actions, baldly claiming what the Defendants "had to know" does not present any fact within DiChiara's personal knowledge.  For this reason, the Court will not consider portions of paragraphs 13, 14, and 15 of the DiChiara Declaration claiming that the Defendants "had to know" the consequences of their actions.

Second, the Defendants argue that the Court should strike portions of paragraph 16 of the DiChiara Declaration that comment on the business relationship between EMG and Fiesta.  Specifically, DiChiara claims that but for the Defendants' conduct, Fiesta would still be a client of EMG.  (DiChiara Decl. ¶ 16.)  As in Atlanta Attachment, DiChiara's opinion as to why Fiesta was no longer doing business with EMG was rationally based on his perceptions as an officer of EMG.  Thus, DiChiara's opinion was based on information within his personal knowledge and experience as president of EMG.  See Atlanta Attachment, 2007 WL 5011980, at *4 (allowing testimony based on CEO's experience and perceptions as officer of plaintiff company).  For this reason, the Court will consider paragraph 16 of the DiChiara Declaration.

Finally, the Defendants argue that the Court should strike portions of the DiChiara Declaration that speculate on 89 Degrees' contacts with Georgia. Specifically, the Defendants object to DiChiara's testimony that "while I do not know

exactly how much business 89 Degrees does in Georgia . . . I have no doubt that the amount of business is substantial." (DiChiara Decl. ¶ 18.) Further, DiChiara claims that "I believe that 89 Degrees performs some element of the marketing process for IKEA and hhgregg" and that marketing materials "likely are created by 89 Degrees and transmitted by it to Georgia." Id. DiChiara does not even claim personal knowledge of these facts. Indeed, this testimony is not a statement of fact, but rather an assertion of DiChiara's personal "belief" regarding 89 Degrees' business practices. Unlike the affiant in Atlanta Attachment, DiChiara does not base this speculation on any first hand knowledge or experience with 89 Degrees. For this reason, the Court will not consider these portions of the DiChiara Declaration.

B.    The Plaintiff's Motion to Strike

The Plaintiff has moved to strike the declarations filed in support of the Defendants' Reply Brief in Support of the Defendants' Motion to Dismiss [Doc. 7]. EMG argues that it is unfairly prejudiced because it cannot respond to the Defendants' reply declarations. The Federal Rules of Civil Procedure provide that "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion . . ." FED. R. CIV. P. 6(d). Further, according to the Local Rules for the Northern District of Georgia, "[e]very motion presented to the clerk for filing shall be accompanied by a memorandum of law which cites supporting authority. If allegations of fact are

relied upon, supporting affidavits must be attached to the memorandum of law." L.R. 7.1A(1), ND Ga.  The court considers reply affidavits only for the "limited purpose of responding to matters raised in the responses filed by the opposing parties." Tishcon Corp. v. Soundview Commc'ns, Inc., No 04-CV-524, 2005 WL 6038743, at *8 (N.D. Ga. Feb. 15, 2005); see also Lewis v. Zilog, Inc., 908 F. Supp. 931, 959 (N.D. Ga. 1995) (finding that affidavits filed with reply brief were untimely filed). In Tishcon, the court refused to consider the plaintiff's reply declarations.  Tishcon, 2005 WL 6038743, at *8. The court reasoned that the declarations "[were] not limited to addressing an argument initiated by defendants in their responses." Id. Rather, the "plaintiff offer[ed] the declarations . . . as a substitution for declarations" filed in support of the plaintiff's motion for summary judgment.  Id.

Here, the Defendants' declarations do not respond to new arguments raised by the Plaintiff in its response.  First, the Declaration of Jeff Jones simply clarifies and elaborates on Jones' contacts with Georgia (See Jones Decl.).  The subject of Jones' contacts with Georgia were not initiated by the Plaintiff in its response.  Indeed, this issue was raised by the Defendants in their Motion to Dismiss.  The Declarations of Thomas Woodside and Phil Hussey similarly elaborate on 89 Degrees' business contacts with Georgia.  (See Woodside Decl.; Hussey Decl.)  This issue was raised by the Defendants in their Motion to Dismiss, not by the Plaintiff in its response.  See id.

(striking declarations that "[were] not limited to addressing an argument initiated by defendants in their responses."). The Defendants' reply declarations merely embellish facts presented in support of the Motion to Dismiss. If the declarations filed with the Motion to Dismiss were  insufficient, the Defendants may not later file reply declarations as a supplement or substitute. See Tishcon, 2005 WL 6038743, at *8 (striking reply declarations "intended to replace inadequate evidentiary submissions offered in support of the plaintiff's two motions for partial summary judgment."). For this reason, the Court will not consider the declarations filed with the Defendants' Reply Brief.

C.      Motion to Dismiss for Lack of Personal Jurisdiction

The Defendants have moved to dismiss under Rule 12(b)(2) for lack of personal jurisdiction. "A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal, 593 F.3d at 1257-58 (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)).

The Georgia long-arm statute provides, in pertinent part:

A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of

action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of the state, if in person or through an agent, he or she: (1) Transacts any business within the state; (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act; (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state ....

O.C.G.A. § 9-10-91. The Georgia long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process." Diamond Crystal, 593 F.3d at 1259.

   1. Personal Jurisdiction Over Jeff Jones

The Plaintiff argues that Jeff Jones is subject to personal jurisdiction under subsection (1) of the Georgia long-arm statute.[1]   See O.C.G.A. § 9-10-91(1). "[S]ubsection (1) long-arm jurisdiction in Georgia expressly depends on the actual transaction of business–the doing of some act or consummation of some transaction–by the defendant in the state." Diamond Crystal, 593 F.3d at 1260. However, because this statutory construction would exceed the bounds of constitutional due process, subsection (1) extends only "to the maximum extent

---

[1]The Plaintiff does not argue that either 89 Degrees or Woodside is subject to personal jurisdiction under subsection (1) of the Georgia long-arm statute.  Thus, the Court will analyze subsection (1) only as it applies to Jones.

permitted by procedural due process." <u>Innovative Clinical v. First Nat'l Bank</u>, 279 Ga. 672, 675 (2005) (<u>quoting</u> <u>Coe & Paine Co. v. Wood-Mosaic Corp.</u>, 230 Ga. 58, 60 (1973)).

In <u>Gee v. Reingold</u>, 259 Ga. App. 894 (2003), a Georgia resident hired an attorney licensed and residing in Tennessee to represent him in litigation pending in Wisconsin.  When the Georgia resident suffered a judgment in Wisconsin, he brought a legal malpractice claim against the Tennessee lawyer.  <u>Id.</u>  The attorney had previously represented the plaintiff in two other matters unconnected to Georgia.  <u>Id.</u> at 895.  The defendant's other contacts with Georgia included telephone and facsimile transmissions initiated by the plaintiff.  <u>Id.</u>  Also, the defendant sent invoices for legal services to the plaintiff in Georgia.  <u>Id.</u>  The court refused to exercise personal jurisdiction over the plaintiff under subsection (1).  <u>Id.</u> at 897.  The court noted that the defendant's "services were performed in Tennessee and pertained to non-Georgia matters."  <u>Id.</u> at 896.  Further, the court reasoned that "[s]tanding alone, a nonresident's telephone or mail contact in Georgia, or even a nonresident's visits to Georgia, is generally insufficient to show the minimum contacts with the State necessary to establish personal jurisdiction." <u>Id.</u> (<u>quoting</u> <u>HTL Sp. Z O.O. v. Nissho Corp.</u>, 245 Ga. App. 625, 627 (2000)).

Here, construing conflicts between the parties' declarations in favor of the Plaintiff, Jones' contacts with Georgia relating to this suit extend well beyond mere telephone and facsimile transmissions.   While employed at EMG, Jones communicated with EMG representatives in Georgia several times a day.   He sent monthly invoices to EMG's headquarters in Georgia.   Jones received the proprietary information he is accused of disclosing from EMG representatives in Georgia.   Jones allegedly disclosed this proprietary information using an EMG email account maintained in Georgia.   Further, unlike the defendant in <u>Gee</u>, Jones visited Georgia to conduct EMG's business, including performing work for Fiesta, 3-4 times per year early in his tenure and 1-2 times per year thereafter.   (DiChiara Decl. ¶ 6.)   Also, Jones traveled to Georgia to work on several accounts for businesses located in Georgia.[2] Thus, unlike the defendant in <u>Gee</u>, Jones performed work in Georgia and worked on Georgia matters.   <u>See</u> <u>Gee</u>, 259 Ga. App. at 896 (reasoning that subsection (1) did not confer personal jurisdiction because defendant performed no services in Georgia and defendant's services "pertained to non-Georgia matters.").   Given the expanded construction of subsection (1) expressed in <u>Innovative Clinical</u>, Jones' "acts within

---

[2]Although the Defendants dispute the nature of Jones' work for these clients, at this stage, the Court resolves conflicts in the evidence in favor of the party asserting jurisdiction.  <u>Madara</u>, 916 F.2d at 1514.

the State of Georgia" support personal jurisdiction over Jones under the Georgia long-arm statute.  See Innovative Clinical, 279 Ga. at 673.

Personal jurisdiction over Jones must also comport with procedural due process. "A forum may exercise specific jurisdiction over a nonresident defendant if the defendant has 'purposefully directed' his activities to forum residents and the resulting litigation derives from alleged injuries that 'arise out of or relate to' those activities." Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 857 (11th Cir. 1990) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

As discussed above, Jones purposefully directed his activities toward Georgia by visiting the state to perform EMG business on numerous occasions, communicating by telephone and email with EMG representatives in Georgia, accepting and distributing confidential information sent from Georgia, and performing work for clients located in Georgia.  Further, these contacts relate to the Plaintiff's injuries. Jones acquired the proprietary information he is alleged to have misappropriated through his contacts with Georgia.  Jones disclosed this information using an EMG email account maintained in Georgia.  Finally, Jones traveled to Georgia to perform

work on the Fiesta account he is accused of soliciting.[3]   Thus, Jones' activities

directed at Georgia relate to EMG's injuries.

Further, Jones is subject to personal jurisdiction under the effects test set forth

in Calder v. Jones, 465 U.S. 783, 789 (1984).  In Calder, the Florida defendants wrote

and edited an article libeling a California resident.   Id. at 784.   Although the

defendants had no other contacts with California, the Court upheld personal

jurisdiction, reasoning that "jurisdiction over [the defendants was] . . . proper in

California based on the 'effects' of their Florida conduct in California."  Id. at 789.

Similarly, in Licciardello v. Lovelady, 544 F.3d 1280 (11th Cir. 2008), the

plaintiff sued a nonresident for trademark infringement.  The Eleventh Circuit held

that personal jurisdiction was proper under the effects test.  Id. at 1288. The court

reasoned that the use of the plaintiff's trademark "was not negligent, but intentional."

Id. at 1287.   Further, the court stated that "the use of [the plaintiff's] mark . . .

individually targeted [the plaintiff] in order to misappropriate his name and reputation

for commercial gain."  Id. at 1288.

The facts in this case are remarkably similar to those in Licciardello.  Here,

EMG alleges that Jones intentionally solicited clients and misappropriated trade

---

[3]Again, the Defendants claim that Jones performed work for Fiesta only in Florida.  At this stage, however, conflicts between the parties' declarations are resolved in favor of the Plaintiff.

secrets in violation of the separation agreement.   As in <u>Licciardello</u>, Jones appropriated the Plaintiff's property "for commercial gain."   <u>Id.</u>   Also like <u>Licciardello</u>, the misappropriation was intentional and targeted at the Plaintiff, seeking to profit from EMG's client relationships and trade secrets.   Thus, Jones has sufficient minimum contacts to support personal jurisdiction in Georgia.

Finally, the Defendants argue that the exercise of personal jurisdiction over Jones does not comport with traditional notions of "fair play and substantial justice." <u>Burger King</u>, 471 U.S. at 478-79.   "Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute."   <u>Licciardello</u>, 544 F.3d at 1288.   In <u>Licciardello</u>, the court found that personal jurisdiction over the nonresident defendant did not offend traditional notions of fair play and substantial justice.   <u>Id.</u>   The Eleventh Circuit reasoned that the "plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the [resident] plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy."   <u>Id.</u>   Further, the court noted that the plaintiff's home state had a "very strong interest in affording its residents a forum to obtain relief from intentional misconduct of nonresidents causing injury in Florida."   <u>Id.</u>

Here, as in <u>Licciardello</u>, the Plaintiff, harmed by the intentional conduct of the Defendants, should not be forced to travel to the Defendants' state of residence to obtain a remedy.   Further, as in <u>Licciardello</u>, "Georgia has a strong interest in protecting Georgia corporations, like the plaintiff, from the illegal attempts of non-residents to misappropriate computer data, technology, trade secrets, and confidential information." <u>Peridyne Tech. Solutions, LLC v. Matheson Fast Freight, Inc.</u>, 117 F. Supp. 2d 1366, 1373 (N.D. Ga. 2000), *abrogated on other grounds by* <u>Diamond Crystal</u>, 593 F.3d at 1249.   Thus, the exercise of personal jurisdiction over Jones comports with traditional notions of fair play and substantial justice.   For these reasons, Defendant Jeff Jones is subject to personal jurisdiction in Georgia.

### 2.   Personal Jurisdiction Over Woodside and 89 Degrees

Having found that Jones is subject to personal jurisdiction in Georgia, the Court now turns to Defendants Woodside and 89 Degrees.   The Plaintiff does not argue that either Woodside or 89 Degrees is subject to personal jurisdiction under subsection (1) of the Georgia long-arm statute.   Indeed, neither Woodside nor 89 Degrees has transacted business in Georgia related to this suit.   Thus, the Court will address subsections (2) and (3) only.

Subsection (2) of the Georgia long-arm statute provides personal jurisdiction over nonresident defendants who commit a tortious act or injury in Georgia.   <u>See</u>

O.C.G.A. § 9-10-91(2).  A tortious act occurs "either where the allegedly negligent act or omission was made . . . or where the damage was sustained."  <u>Atlanta Propeller Serv., Inc. v. Hoffmann GMBH & Co.</u>, 191 Ga. App. 529, 530 (1989).  "[A] tort occurs when and where the actual injury or accident takes place, and not at the place of the economic consequences of that injury." <u>Id.</u> (quoting <u>Portnoy v. Cessna Aircraft Co.</u>, 730 F.2d 286, 290 (5th Cir. 1984)).

Here, neither Woodside nor 89 Degrees has committed any act or omission in Georgia.  Still, the Plaintiff argues that the Defendants are subject to personal jurisdiction because EMG sustained an injury in Georgia.  This argument is without merit.  With respect to solicitation of Fiesta, the injury took place in Mexico, where the Defendants improperly solicited and acquired EMG's former client.  With respect to the misappropriation of trade secrets, the injury took place in Massachusetts, where Jones revealed secrets to Woodside and 89 Degrees and where, allegedly, the Defendants took advantage of those secrets for commercial gain.  Although the economic consequences of these injuries manifested in Georgia, neither Woodside nor 89 Degrees committed a tortious act in Georgia sufficient to establish personal jurisdiction over them.

A contrary interpretation of subsection (2) would render subsection (3) of the long-arm statute superfluous.  As discussed below, subsection (3) authorizes personal

jurisdiction over nonresidents who commit tortious acts *outside* Georgia causing injury *inside* Georgia.  <u>See</u> O.C.G.A. § 9-10-91(3).  Subsection (3) also requires, however, that the nonresident regularly do or solicit business, engage in a persistent course of conduct, or derive substantial revenue from Georgia.  O.C.G.A. § 9-10-91(3).  Reading subsection (2) to provide personal jurisdiction in this case, where tortious conduct outside Georgia caused economic harm inside Georgia, would create an end around the more stringent requirements of subsection (3).  <u>See</u> <u>Diamond Crystal</u>, 593 F.3d at 1262 (<u>citing</u> <u>Innovative Clinical</u>, 279 Ga. at 354) (noting that extending subsection (2) to maximum extent of due process "rendered subsection (3) superfluous, thereby eviscerating legislative intent.").  Thus, Woodside and 89 Degrees are not subject to personal jurisdiction under subsection (2) of the Georgia long-arm statute.

Finally, the Plaintiff argues that Woodside and Jones are subject to personal jurisdiction under subsection (3) of the long-arm statute.  Subsection (3) provides for personal jurisdiction over nonresidents who "[c]ommit[ ] a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state." O.C.G.A. § 9-10-91(3).  In <u>Gee</u>, the defendant attorney had five cases pending in

Georgia at the time of the suit.  Gee, 259 Ga. App. at 897.  Also, the attorney had

appeared several times in Georgia on behalf of another client.  Id.  Still, the court

found that the defendant was not subject to personal jurisdiction under subsection (3).

Id.  The court noted that the defendant "did not maintain an office in Georgia,

advertise in Georgia, derive a substantial income from services rendered in Georgia,

or engage in a persistent course of conduct within Georgia."  Id.

Here, the Plaintiff has presented no evidence showing that either Woodside or

89 Degrees has engaged in any business in Georgia.  89 Degrees has no presence in

Georgia and performs no work in Georgia.  EMG notes, however, that 89 Degrees has

several clients that maintain locations in Georgia.  Although those clients may derive

substantial revenue from Georgia, EMG has produced no evidence showing that 89

Degrees derives substantial revenue from Georgia.   Indeed, 89 Degrees asserts that

it "has not conducted any business activities in the State of Georgia."  (Hussey Decl.

¶ 8.)  EMG has not shown otherwise.[4]  Thus, neither Woodside nor 89 Degrees is

subject to personal jurisdiction under subsection (3) of the Georgia long-arm statute.

For these reasons, Defendants Woodside and 89 Degrees are not subject to personal

jurisdiction in Georgia.

---

[4]As discussed above, DiChiara's conclusory assertion that he has "no doubt that the amount of business is substantial" will not be considered by the Court.

D.      Motion to Dismiss for Failure to State a Claim

The Defendants have also moved to dismiss the Plaintiff's claims for breach of contract (Count 1), tortious interference with contract (Count 2), tortious interference with business relations (Count 3), and unjust enrichment (Count 8) for failure to state a claim.  See Fed. R. Civ. P. 12(b)(6).   First, the Defendants argue that the nonsolicitation agreement is unenforceable because it does not specify which EMG customers Jones cannot solicit.  In Georgia, "unless the nonsolicit covenant pertains only to those clients with whom the employee had a business relationship during the term of the agreement, the nonsolicit covenant must contain a territorial restriction." Advanced Tech. Consultants, Inc. v. Roadtrac, LLC, 250 Ga. App. 317, 321 (2001).

In Palmer & Cay of Georgia, Inc. v. Lockton Cos., 280 Ga. 479 (2006), former employees filed a declaratory judgment action to determine the validity of a nonsolicitation agreement.   The agreement stated that the employees would not "solicit, divert, or take away . . . the customers of the Company which were served by the Employee . . ." Id.  The Georgia Supreme Court upheld the agreement.  Id. at 480. The court reasoned that although the agreement did not include a territorial restriction, the covenant was "narrowly limited to only those customers of [the employer] who were served by the Employees during their respective terms of employment."  Id.

Here, the nonsolicitation agreement does not include a territorial restriction.   The agreement does, however, only prohibit Jones from soliciting customers "with whom [Jones had] been servicing."   (Compl., Ex. A.)   Thus, as in <u>Palmer</u>, the solicitation agreement is "narrowly limited to only those customers of [EMG] who were served by [Jones]."   <u>Palmer</u>, 280 Ga. at 480.

Also, the Defendants argue that the nonsolicitation agreement is invalid because it is not restricted to solicitations in competition with EMG's business.   In Georgia, nonsolicitation agreements are invalid if they do not "limit the purpose for which [the employee] may not solicit [the employer's] clients."   <u>Riddle v. Geo-Hydro Eng'rs, Inc.</u>, 254 Ga. App. 119, 120 (2002).   Here, the nonsolicitation covenant limits the purpose for which Jones may not solicit EMG customers.   The agreement provides that Jones agrees "not to solicit the customers of the Company with whom you have been servicing for marketing services . . ." (Compl., Ex. A.)   Although ineloquently worded, the phrase "for marketing services" specifies the purpose for which Jones is not to solicit EMG customers.   The phrase "whom you have been servicing" specifies which customers Jones may not solicit. It would be  redundant for the covenant to provide two consecutive and virtually identical limitations on the class of customers that Jones cannot solicit.   Rather, the phrase "for marketing services" more appropriately restricts the purpose for which Jones may not solicit EMG clients.   So

interpreted, Jones is free to solicit EMG clients for any purpose other than to provide marketing services.  Thus, the nonsolicitation agreement limits its scope only to solicitation in competition with EMG's business.  For these reasons, the nonsolicitation agreement is valid.

<h3 style="text-align:center">IV.  <u>Conclusion</u></h3>

For the reasons set forth above, the Defendants' Motion to Strike [Doc. 8] is GRANTED IN PART and DENIED IN PART, the Plaintiff's Motion to Strike [Doc. 9] is GRANTED, and the Defendants' Motion to Dismiss [Doc. 2]  is GRANTED IN PART and DENIED IN PART.

SO ORDERED, this 22 day of October, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge